# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ERNEST B. FORD, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 07-1305 (CKK) |
| | : | |
| UNITED STATES DEPARTMENT | : | |
| OF JUSTICE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

This matter is before the Court on defendants' motion for summary judgment.  On consideration of defendants' motion, plaintiff's opposition, and the entire record of the case, the Court will grant summary judgment for defendants.

### I.  BACKGROUND

In September 2005, plaintiff submitted a request to the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice, under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552.  Complaint ("Compl.") ¶ 4.  From the criminal case file pertaining to proceedings against him in the Superior Court of the District of Columbia, United States v. Ernest B. Ford, Crim. No. F-6753-87 ("Crim. Case No. F-6753-87"), plaintiff  requested three documents:

> 1.)    July 1989 Plea Hearing Transcript.
> 2.)    September 1989 Sentencing Hearing Transcript.
> 3.)    1989 Transcript of the last court appearance in the case (in which both counsel and defendant were present) that chronologically preceded the July 1989 Plea Hearing.

1

Memorandum in Support of the Defendant's Motion for Summary Judgment ("Defs.' Mot."),

Attach. 1 (First Stearns Decl.), Ex. 1 (September 19, 2005 FOIA Request) at 1.  Plaintiff

indicated that he "may be requesting the entire case file" at some point but, "due to cost

limitations, [he] realize[d] that [it] may not be either feasible or prudent" to make such a request

at that time.  *Id.*  The EOUSA assigned the matter Request Number 05-2930.  Compl. ¶ 5; First

Stearns Decl. ¶ 6.

In September 2005, EOUSA staff forwarded plaintiff's FOIA request to the FOIA contact

person ("FOIA Contact") at the United States Attorney's Office for the District of Columbia

("USAO/DC").  Defs.' Mot., Attach. 2 (Bowman Decl.) ¶¶ 1, 3.  A search of computerized

records in September 2007 yielded one closed case file (one box) for Crim. Case No. F-6753-87,

and a manual search of these paper records did not yield the three transcripts.[1]  *Id.* ¶¶ 6-7.  An

electronic mail request to the entire staff of the USAO/DC, too, failed to locate these transcripts.

*Id.* ¶ 8.  The EOUSA notified plaintiff of this "no records" result in writing.  First Stearns Decl.,

Ex. 5 (September 11, 2007 letter form William G. Stewart II, Assistant Director, Freedom of

Information & Privacy Staff, EOUSA).

Plaintiff filed the instant civil action in July 2007.  *See* Compl. (stamped "received" by

the Clerk of Court on July 2, 2007).  In an Amended Complaint, plaintiff requested "that

defendants disclose and make immediately available to him, not only the three originally

requested transcript documents but, the entire case file in Crim. Case No. F-6753-87 (United

States v. Ernest B. Ford) already referenced as being heard in the Superior Court of the District of

Columbia and prosecuted by the United States Attorneys of that jurisdiction."  Motion to Amend

---

[1]        The record does not explain the two-year delay in conducting the search.

Complaint ("Amd. Compl.") ¶ 1 (emphasis in original).[2]

The EOUSA had no record of a FOIA request from plaintiff for the entire file for Crim. Case No. F-6753-87 prior to the filing of the Motion to Amend Complaint. Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Attach. 1 (Second Stearns Decl.) ¶¶ 4-5. It treated plaintiff's request for the entire case file as a new FOIA request and assigned it Request Number 07-4195. *Id.* ¶ 6 & Ex. 1 (December 13, 2007 letter from William G. Stewart II). The EOUSA has asked the USAO/DC perform a new search for records responsive to Request Number 07-4195. *Id.* ¶ 7. The results of this search were not included in the record of this case.

## II.   DISCUSSION

### A.   Summary Judgment in a FOIA Case

The Court grants a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits may be accepted as true, unless the opposing party submits his own affidavits or documentary evidence that contradict the movant's assertions. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (citing *Lewis v. Faulkner*, 689 F.2d 100, 102

---

[2]      Plaintiff filed his Motion to Amend Complaint on August 22, 2007. Defendants' Answer, filed on August 24, 2007, "incorporates an answer to plaintiff's Amended Complaint" in the event that plaintiff's motion were granted. Answer at 1 n.1. The Court granted plaintiff's motion on August 28, 2007.

(7th Cir. 1982)).

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact with regard to the agency's compliance with the FOIA. *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citing *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), *reh'g denied*, 763 F.2d 1436 (D.C. Cir. 1985)). The Court may award summary judgment based solely upon the information provided in affidavits or declarations when the affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B.  Search for Responsive Records

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (FOIA requires agency to conduct search using methods reasonably expected to produce requested information). The agency bears the burden of

showing that its search was calculated to uncover all relevant documents. *Steinberg*, 23 F.3d at 551. To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). These declarations "are accorded a presumption of good faith," *SafeCard Servs., Inc.*, 926 F.2d at 1200, and, absent contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Perry*, 684 F.2d at 127. If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542.

In support of their motion, defendants submit the declaration of Susan Bowman, Supervisory Operations Specialist for the Superior Court Division, United States Attorney's Office for the District of Columbia. *See* Defs.' Mot., Attach. 2 ("Bowman Decl.") ¶ 1. The declarant describes the office's relevant systems of records as follows:

> The Superior Court of the District of Columbia has a computerized docketing/case management system known as the Court Information System (CIS). This computerized system of records (RCIS) was replicated by the [USAO/DC] to track cases or matters for the USAO's Superior Court Division. Whenever an office file on a new matter or new case is opened, the Division's Superior Court [N]umbering Section will enter applicable information into the CIS computer system and assign the case or matter a case number which will be used as an internal tracking number for the Office. The information entered into the computer is based on a series of individual records which are linked together, or related, or in logical order. These records may include, but are not limited to, the names of parties, the names of any related cases, what the case is about, what Assistant United States Attorney is handling the case, the Court assigned to the case, and what stage the case is in.
>
> The RCIS system is the current computerized record tracking system that is availble and used by the Superior Court Division for the District of Columbia. The RCIS system allows the user to search

5

> Superior Court Division matters b specific names.  The RCIS system is capable of cross-referencing other related cases if such related case information is entered into the system.  Due to the large number of files maintained by the Office . . . any search for case related documents must be performed by the use of RCIS.  A purely manual search for specific files/documents would be so burdensome as to be virtually impossible for the United States Attorney for the District of Columbia.  Moreover, files are closed on a timely basis and such records are shipped periodically to the Federal Records Center in Suitland, Maryland where they are maintained for a specific number of years (typically 10 years).

*Id.* ¶¶ 4-5.  There is a third computerized records system, the Closed Files Information Tracking System (CFITS), that the Superior Court Division uses to locate closed files.  *Id.* ¶ 6.  CFITS "allows the user to search Superior Court Division matters by specific names," and is "capable of cross-referencing other related cases if such related case information is entered into the system." *Id.*

The declarant conducted a search of RCIS using plaintiff's name and the criminal case number he provided as search terms.  Bowman Decl. ¶ 7.  The search yielded one closed case file (one box) which the declarant obtained from the Federal Records Center.  *Id.*  She manually searched the box "for the specific items (July 1989 Plea Hearing Transcript, September 1989 Sentencing Hearing Transcript, and 1989 Transcript of the last court appearance in the case . . .) as requested by [plaintiff]." *Id.*  The transcripts were not in the box.  *Id.*

Plaintiff argues that defendants' search was neither adequate nor reasonable under the circumstances.  *See* Memorandum in Support of Plaintiff's Opposition to Defendants['] Motion for Summary Judgment [Dkt. #20] ("Pl.'s Opp'n") at 1.  He deems the declarant's "assertions to be evasive at best and untruthful at worse." *Id.* at 2.  Because defendants did locate one box of responsive records, plaintiff finds it "[w]holly incredible [] that [he] is imprisoned under a Life

Sentence, presumably the result of a plea for which <u>no</u> record exists." *Id.* at 3.  He finds "little consolation" in the possibility that "anyone with access to the requested files has power to delete relevant information/documents" from the file he seeks.  Memorandum in Support of Plaintiff's Opposition to Defendants['] Motion for Summary Judgment [Dkt. #21] at 2.

"The question is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Steinberg*, 23 F.3d at 551 (citation and internal quotation marks omitted).  It is plaintiff's burden in challenging the adequacy of an agency's search to present evidence rebutting the agency's initial showing of a good faith search.  *See Maynard v. Central Intelligence Agency*, 986 F.2d 547, 560 (2d Cir. 1993); *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351-52 (D.C. Cir. 1983). Plaintiff suggests, without support, that responsive records may exist.  Mere speculation as to the existence of records not located as a result of the agency's search does not undermine the adequacy of the search.  *See Weisberg*, 745 F.2d at 1485 (focus of Court's inquiry is on reasonableness of search, not whether undisclosed records may exist).

An agency's lack of success in locating responsive records does not render the search inadequate where the agency's supporting declarations establish its compliance with FOIA. Having reviewed defendants' declarations and plaintiff's submissions in response, the Court concludes that defendants' search was reasonable under the circumstances and that its "no records" response was proper.

### C.  Exhaustion of Administrative Remedies

A plaintiff "may generally seek judicial review of his FOIA request only after he has exhausted all administrative remedies." *Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir.

1995); *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 61-62 (D.C. Cir. 1990). A

FOIA suit is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure if a

plaintiff fails to exhaust his administrative remedies prior to initiating a lawsuit. *Hidalgo v. Fed.*

*Bureau of Investigation*, 344 F.3d 1256, 1260 (D.C. Cir. 2003) (remanding with instruction for

district court to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to exhaust); *see Dettmann v.*

*United States Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986). However, the District of

Columbia Circuit instructs that, while exhaustion is "a jurisprudential doctrine, [and] failure to

exhaust precludes judicial review," it is not a jurisdictional barrier to such review. *Hidalgo*, 344

F.3d at 1258. The Court can address the merits of a case notwithstanding a plaintiff's failure to

exhaust if it determines that the purposes and policies underlying the exhaustion requirement

would not be undermined by reaching the merits of the case. *See Wilbur v. Central Intelligence*

*Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam) (concluding that policies underlying the

exhaustion requirement were served where requester pursued administrative review process four

years late, and agency accepted, processed and issued final decision on appeal).

  Defendant asserts that plaintiff requested the entire file for Crim. Case No. F-6753-87 for

the first time in his Amended Complaint. Def.'s Mot. at 8; *see* Amd. Compl. ¶ 1. Because

plaintiff had not submitted a proper FOIA request to the agency and because the agency had no

an opportunity to respond to the request, defendant argues that this claim should be dismissed for

failure to exhaust administrative remedies. *Id.* at 9.

  Plaintiff responds that in "his initial request [he] ask[ed] for 'all information about

[himself] in criminal case files' (referencing Crim. Case No. F-6753-87) and defendants then

deem[ed] it a 'Project Request' that would be fulfilled within 9 months." Pl.'s Opp'n at 5. It

appears that plaintiff had requested his entire case file in a FOIA request submitted to the

EOUSA on an unspecified date before the September 19, 2005 request.[3]  *See id.* at 5-6 & Ex. A

(October 15, 2005 letter from M.A. O'Rourke, Assistant Director, Freedom of

Information/Privacy Act Staff, EOUSA).  The EOUSA's written response advises plaintiff that

the processing of "a very large request (Project Request)," such as a "[r]equest for 'all

information about myself in criminal case files," may take up to nine months.  *Id.*  The

September 19, 2005 FOIA request referenced in the Complaint, *see* Compl. ¶ 4, reflects that

plaintiff "narrowed [his] request to three specific documents," which were transcripts from his

plea hearing, sentencing hearing, and from his last court appearance before the plea hearing.

Stearns Decl., Ex. 1 at 1.  The sole FOIA request properly before the Court, then, is the

September 19, 2005 request for these three transcripts.

        As noted previously, plaintiff's request for the entire file for Crim. Case No. F-6753-87 is

the subject of a separate FOIA request (Request Number 07-4195).  The Court declines to

address the merits of this claim until such time as "the agency has an opportunity to exercise its

discretion and expertise on the matter and to make a factual record to support its decision."

*Oglesby*, 920 F.2d at 61 (citation omitted).  To do so at this juncture undermines the purposes

and policies underlying the exhaustion requirement.

---

        [3]        A handwritten notation on plaintiff's September 19, 2005 FOIA request states,
"Please disregard previous request which failed to include <u>certification</u> <u>of</u> <u>identity</u>."  Stearns
Decl., Ex. 1 at 1.

III.   CONCLUSION

The Court concludes that defendants conducted reasonable and adequate searches for records responsive to plaintiff's September 19, 2005 FOIA Request No. 05-2390 for three transcripts.  Notwithstanding defendants' inability to locate these transcripts, defendants demonstrate their compliance with the FOIA .  Because plaintiff failed to exhaust his administrative remedies with respect to his request for the entire file for Crim. Case No. F-6753-87, the Court concludes that this claim must be dismissed.  Accordingly, the Court will grant defendants' motion for summary judgment.  An Order consistent with this Memorandum Opinion will be issued separately on this same date.


COLLEEN KOLLAR-KOTELLY
United States District Judge

Date:   May 29, 2008

10